Good morning. May it please the Court. My name is Andy Freedman and I represent the plaintiff and appellant in this case, Beverly Burton. Prior to 1975, there was no requirement in California that an insurance company pay any interest on death proceeds that were unpaid. The California legislature in 1975 adopted California Insurance Code section 10172.5 to address that situation because some felt that insurance companies were delaying payments to simply pocket the interest. After considering several different alternatives, the California legislature settles upon a solution and they made a legislative determination that when an insurance company fails to pay death proceeds within 30 days after the date of death, it must pay interest at a rate not less than the current interest rate paid on death proceeds left on deposit. We think that is an unambiguous legislative command that resort to legislative history is however unnecessary, but the legislative history confirms that in adopting that statute, the California legislature adopted a fixed interest rate requirement. And when would that kick in? Like if I, heaven forbid, passed away right now under your interpretation, would it be as of, what, October 6th? Whatever the rate was that day? Yes, the rate would be the rate of death, the rate, I'm sorry, the rate, the then current interest rate of funds left on deposit with the insurance company as of the date of death, calculated from the date of death, so that the then current rate would be the rate that the insurance company pays on deposits as of that point in time, Your Honor. If that rate is low, doesn't that not achieve the point of the legislative history? Because at that point, the company has an incentive to keep the money and earn a higher interest rate as rates go up and pay it some time away in the future at the low rate of death, at the time of death? Your Honor, the legislative directive was to fix the rate as of that date at the then current interest rate. That hypothetical concern is, number one, not within the legislative mandate. And secondly, it's simply not... But what do you mean it's not within the legislative mandate? I thought you were arguing that was the purpose of the legislature, to avoid this kind of incentive. It is the purpose of the legislature. At the time the legislation was adopted, there was no interest paid. So an insurance company, by definition, was earning interest. There's no discussion anywhere of a need for a variable rate. The hypothetical situation that you posit, Your Honor, is not only inconsistent with the legislative history and language, but it really is something that is speculative and not rational. If you think about it, if an insurance company was going to keep money, making a bet that the interest rates may rise in the future, that requires several things to happen. One, the insurance company would be interest rates don't move quickly. They don't change in a matter of days, weeks, or even months. So that hypothetical concern would require a conclusion that the insurance company is going to make a systematic decision to withhold benefits for a protracted period of time on the hope or expectation, insurance, that interest rates may rise. There's no need to read into the statute an additional disincentive because there are other, much more direct disincentives prohibiting and preventing that scenario from occurring. Specifically, the insurance code, section 7035H5, specifically requires that insurance companies must promptly pay proceeds upon determining that the claim is due. So there is a separate independent statutory obligation on the insurance company to promptly pay. There are other subdivisions of the same statute imposing a requirement to promptly adjudicate claims. So there is that already existent statutory mandate. Secondly, if an insurer... If that's true, then does that leave us with the legislative history about what the legislature was trying to do? Does that leave us with it meaning nothing, basically? Because if they have to pay promptly, they have to pay promptly. It really doesn't matter what the interest rate is, right? Well, it does matter because prior to the statute, they were paying no interest. Right. But we know it's some interest rate. So, I mean, we know that the legislature wanted them to pay an interest rate. So we have that. But are you saying the legislative history adds nothing more than that? The legislative history requires they pay the interest rate at the then current rate that existed on the date of death. But how do we know from the legislative history that it's the date of death? Well, let me just finish the last... I'll close it off and I'll go right back to that, Your Honor. In addition to the legislative mandate in the insurance code requiring prompt payment already, meaning you can't delay, because that's the concern here, is that there will be a systematic delay on the hope that interest rates may rise. An insurance company that would engage in that sort of conduct would also expose itself to massive liability for bad faith, because the case law settled in California is that an intentional delay in payment results in liability for bad faith. I'd submit that there's no rational expectation that an insurance company would bet on interest rates, delay payments for months and months, expose itself to liability, both statutory and bad faith, solely on the hope that they may arbitrage a couple of extra interest points. Going back to your last question, which is how do we know that that's the date when it was fixed, that statutory language is, in the four critical words, that it's the then current interest rate. Right, but why couldn't the then current interest rate mean the rate that applies as time passes? So whether if it accrues every month, then every month that the insurance company still has the money, the interest for that month is the rate of that time. And then the next month, it's the rate of that time. Why isn't that a natural reading of the language? Because the word that reads right out of the statute, the words then current. No, because it's the then current rate at the month that you're accruing the interest. Then is defined as a point in time. The only point in time referenced in 101-72.5 is the date of death. The court below recognized that an interpretation which provides for a future series of floating interest rates rather than a singular rate results in reading out of the statute as Right, I'm not sure why then current couldn't mean the rate then applying at the time when you're accruing the interest. Now, it seems like the insurance company sometimes did it monthly, sometimes did it yearly. We could talk about whether that makes sense. But whatever the rate of accrual is, it's the then current rate, right? I'm not sure. I'm still not quite understanding why that would be surpluses. Because the statute, the legislature knows how to provide for a variable or fluctuating rate. It does so in the other insurance code sections. When you're talking about a policy loan provision, it specifically provides for a variable rate. When you're talking about other variable rates, it's very specific. Here, the statutory language uses the definitive then, the then current rate. But then counsel then goes on to say of interest on death proceeds left on deposit. When I hear the term left on deposit, that's not a snapshot. That means it's been left for some period of time. So I don't think you can read it and stop it on death. It talks about death proceeds left on deposit. So harmonized left on deposit, which implies to me you're leaving it somewhere for a certain period of time with this idea that it's the snapshot that you're proposing. Because the insurance company has a rate as of the date of death, which is a current rate. And that rate is the rate that's applied to funds that are on deposit at that point in time and left on deposit at that point in time. But it says left on deposit. Doesn't that mean a period of time? I mean, it doesn't say the money in the bank right now. No, but that is the phrase that refers to the provisions in the policy which provide what a given rate is for funds that are left with the that the then current rate in the singular can refer to future fluctuating rates and variable rates over time. It cannot. Well, there's only one rate of deposit at any time, right? That's my understanding. We have no record in this case because there was no discovery. So we don't know to a certainty. You say there is no discovery, but there was some discovery. Aren't you the one trying to get us to take judicial notice of a discovery response? There was one answer to one interrogatory that talked about how this particular interest rate was applied. That was contrary to what the insurance company told the beneficiary when an inquiry was made. There's been that is the limited discovery. One answer to one interrogatory. There's been no other discovery. The case was dismissed at the pleading stage. Let me ask you about that, counsel. Let's say, hypothetically, the other side persuades us, says this court got the interpretation correct, that it's a fluctuating rate, not what I'll call the snapshot rate, my words. It seems to me your case could still survive because even if the theory is this fluctuating rate legal theory, I'm not sure they paid that in this case, or at least there's some indication that they didn't pay a fluctuating rate because first they said it was the 2% rate, and then they, in their brief now, they said it was a 5% rate. You haven't learned anything about what the rate actually they were paying during this time period is, do you? That's true. We were given leave to amend, and we amended and alleged that even if what we believed to be an incorrect interpretation were to apply, that we were entitled to go forward and explore whether that occurred. The court then dismissed the amended complaint, saying it was an er-twombly, we didn't come forward with specific facts demonstrating what the company actually had done. We had no discovery. We don't know, other than an answer in an interrogatory, what the company claims to have done. And so we, of course, as an alternative ground, asked to go back to the court below and prove the case in the event the court were to accept Prudential's interpretation. And if we agree with the insurance company's interpretation, but did agree with you that you should be entitled to more discovery, would you be pursuing an individual claim at that point, or would it still be a class action? It would depend on what discovery revealed, Your Honor. It would depend upon whether this is a one-off situation, ultimately, if they did not apply the rate as interpreted by the court, or whether it was systematic and done across a broad spectrum of beneficiaries. With that, I think I would like to reserve the remaining time. Thank you. Good morning. And may it please the Court, my name is Maeve O'Connor of the law firm of Demovoice and Plimpton for the Prudential Insurance Company of America. It's obviously clear from our papers, we think the plaintiff's interpretation of the statute is wrong on multiple counts. It's not supported by the language of the statute. It's not supported by the legislative history. In fact, it is directly contrary to what the purpose of the statute is and what plaintiff conceded, as plaintiff had to, is the purpose of the statute. Taking a step back, this case is unusual in that courts have rejected the argument advanced by the plaintiff on two separate grounds. One is in a case decided just a couple of weeks ago by Judge Houston in the Southern District of California, which dismissed a similar case, very similar theory, on the ground that the statute doesn't even trigger an interest obligation until 30 days after a claim for benefits is made. So in this case, the plaintiff's son died in 1981. There's no allegation that plaintiff made any claim for benefits prior to 2013. So, you know, just... I mean, that's one thing I was curious in this case. I mean, we have virtually no discovery in this case. How did this happen? How did it come to be 32 years later this claim was filed or... Can you tell us why we're here now? Yeah, sure. I'd be happy to address it. I mean, there's... It's established law in all 50 states that there's no obligation to pay a claim until a claim is made, pay any benefits until a claim is made under a policy. You know, Prudential, like many companies, goes beyond what the law requires and for many years has taken steps affirmatively to seek out whether a policyholder may have died and then to try to contact the beneficiary. In this case, the policy file was opened in 1958 by the plaintiff's husband, and he did not provide a social security number for the son, which is typical in that time period. Social security numbers weren't a routinely used identifier. And so the way that companies are able to search and try to identify a death is to check their records against something called the Social Security Administration's Death Master File, and you can do social security number matches. So it never came up. Recently, the company was able to identify this death by using a third-party proprietary search function that identified it, Prudential reached out to the plaintiff, said, we think you may be the beneficiary of a policy, and that's how the time elapsed, that the company didn't know of the death and no claim was made because apparently maybe the family didn't know of the policy. Is the company just being nice to do that, or is there some reason why it's actually harmful to the company to have an unpaid claim? I mean, Prudential has done this for a long time, just believing it's a best practice. There's no legal requirement to undertake to do that, but just that it's in the company's in the business of paying claims. So, but to get back to your first point, though, I understand the legal argument you're making. I understand that argument was not made in the district court, is that correct? No, that's not correct. That argument was made in the district court. I'm happy to point to citations, ER 215, ER 116. We made it in both of our motions to dismiss. We set out the argument with case citations. Plaintiff didn't respond to it, but we did set it out, and it's a pure legal question of statutory interpretation, so I think it's plainly something that the court can address. But in terms of discovery, we don't, I understand your representations of how it came to be, and I have no reason to doubt your representation, but they have not had a chance to come back, and maybe they could produce a, just hypothetically, they could produce a letter that was sent to the insurance company in 1981 saying that they did make a claim and that it was ignored by the insurance company. There hasn't been that level of discovery on how this claim was initiated, correct? That's correct, but plaintiffs also don't get discovery in order to plead a claim. That's not the way it works under Trombley and Iqbal. No, but they could come forward, I mean, if the court were going to make that an issue. The district court never addressed this issue, correct? That's correct. So if the district court wanted an issue, perhaps they could come back and amend their complaint and say, well, no, in 1982, we actually did make a claim with Prudential and it was ignored. I mean, that hasn't been litigated, this whole issue. That hasn't been litigated. This is a motion to dismiss. The plaintiff has not alleged that any claim was made before 2013. That's sufficient for a motion to dismiss. The plaintiff has been given an opportunity to amend and did not add a single fact to the complaint, a single factual allegation. Having said that, I think the final judgment was entered without prejudice. The plaintiff can try to amend again, but the plaintiff is not going to be able to do that because there's not going to be an ability to make that type of allegation. It was entered without prejudice? How are we here then? Are you sure about that? I thought it was with prejudice. But I could be wrong. I believe I just read that the other night in the... I don't have that record right in front of me, Your Honor. Well, I've got it here, so keep going and I'll look at it here. Okay. So, under that argument that was just decided by Judge Houston, under established California law, insurers have no duty to pay life insurance proceeds before a claim is made. So the statute references monies being payable. No monies are payable prior to a claim being submitted. The statute also says... Do you want us to rule on that issue now? I think that we would be pleased with an affirmance on either that ground or on the ground that was decided below. How would you feel if we ruled against you on that issue? Less good, but I think that... Do you think it's properly before us now to rule on that question? Well, I think it was raised below. I think the plaintiff had an opportunity to respond. I think you raised it in the footnote in the brief, didn't you? That's right, with supporting citations. So we believe it is an issue, it's a legal issue that can be addressed by the court. And what... Did you ask the district court to rule on that ground? We raised the argument and we reserved our rights with regard to it. Yeah, in other words, you really didn't ask the district court. You really tried to reserve rights. Well, I mean, I guess that's arguable, how you would like to look at it. I'd like to look at it the way it reads, that you're reserving your rights, meaning you're not pressing them before the district court. That's how I'd look at it. OK, well, I believe it's a pure legal question that the court in its discretion can address. There's no factual record that needs to be developed. You're tempting me very much to rule against you on that issue, if you really want us to rule on it, because so far all we know is that's been the practice of the company. And that's the way the statute's been interpreted by you. So that's all we know so far. Well, that's actually not been the practice of the company. The company has gone beyond what the law requires and the company has paid interest from 30 days after the date of death forward. Yes, that's been the practice, paying interest from the date of 30 days forward. That's correct. And I can move to that argument, unless the court has further questions. Well, I'm actually concerned about whether we have jurisdiction. I didn't realise that there was leave to amend in the second ruling on... in the second motion to dismiss ruling. Why are we here if there was leave to amend? Your Honour, that is a fair question. The plaintiff asked for the judgment to be entered without prejudice so that the plaintiff could seek appeal. The district court certified the question as an interlocutory appeal that would be dispositive. Did the district court do that? I don't believe so. I believe it was just a final judgment that was entered. I apologise if I don't have it in front of me. I believe it was a final judgment that was entered. I don't see anything in the district court's order saying... Well, I take this back. It's on to on ER 4, order re... Plaintiff's motion to amend the court's order to certify it for interlocutory appeal and to stay this action pending interlocutory appeal. Ah, OK. We're OK. OK, sorry. OK, I apologise for the confusion. So, in any event, to the extent that interest is owed under the statute, we think that the way in which the district court interpreted the statute and the way that the company has been interpreting the statute is the correct way and that the language of the statute provides far greater support for that interpretation than for the plaintiffs. And plaintiffs' whole theory, of course, is that you lock in the interest rate that's in effect on the date of death. The statute plainly does not say that. It would be easier to say the interest rate in effect on the date of death is what applies. And it just doesn't use that language. It refers to the date of death as the point at which the interest computation begins to run. And that's not surprising because, as we, you know, under plaintiffs' theory, the statute is akin to a lottery. And if your loved one dies in a high interest rate year, you are golden. If your loved one dies in a low interest rate year, even if the company is paying a higher rate of interest on other funds that it holds on deposit in that period, you're not going to get it. No, that doesn't mean you're not going to get it. It says you have to pay interest not less than that rate. But we know the beneficent insurance company would like to pay a fair rate. And so even though the rate was 2%, the statute doesn't say you must pay 2%. It says you must pay at least 2%. You could still pay 7% if you're sympathetic to the insurance policy holder. Well, Your Honour, I believe that insurance companies are good actors in the world, but the legislature of California was obviously very concerned about creating incentives in which an insurer could be profiting from holding funds for a lower interest rate and using them to gain a profit. That was the driving concern of the legislation, and that is the kind of core issue underlying the purpose of this statute. I was just pointing out that you're not limited to that low rate. That's a minimum for your consideration as to what a fair rate would be. I think that's fair, Your Honour, but I think that that doesn't address the concern that the legislature had underlying the... And I was a little bit confused by your brief about whether your position is that the then-applicable rate is the rate as the interest accrues, whatever the accrual time is, or the rate at the time of the request for payment when it's finally made. Yes, our position is that then-current essentially means the rate that's in effect during the time you hold my money. And so what do you mean by that? Like, every month it accrues, and so it's the rate on that date of accrual? That's right. It's then-current throughout the period  And actually, I think... And who decides if that's daily, monthly, yearly? How does that get determined? That is not addressed in the statute. I believe that's left to the discretion of the insurance company. There are market factors at issue. I think a beneficiary who had claimed their funds wouldn't leave it on deposit with the insurance company if it weren't something of a reasonable rate. But there's nothing in this statute that purports to dictate how that rate should be set, whether that rate can move. It looked from the interrogatory response, like the company switched its frequency of accrual, so it went from monthly to yearly or yearly to monthly at some point. Do you know why that occurred? I don't know why that was done, but that's just the way it was done. And am I correct that the company never explained to plaintiff how that was decided or what the rate was at any particular time during that period, or when it was monthly, what day of the month, or when it was yearly, what day of the year? Has never explained. There hasn't been discovery at that level of granularity. That's correct. So is there any argument against allowing further discovery in an amendment, at least on that issue? Even if we agree with your interpretation, why should there not be discovery to try to figure out whether she got paid the amount that she was supposed to be paid? Because I guess I would say that that's not the way the pleading standards work. But she has pled that the company said we paid 2.5%, which we know is plainly not true. So she says, seems like they didn't pay me the amount they're saying or the right amount. Why isn't that enough if we know that they told her an amount that was wrong? And that's the only thing she knows, is the amount that they told her which was wrong. It's not enough because there are no well-pleaded facts suggesting that the company failed to apply the statute correctly. There is this notion that the company paid 2.5% in the first communication, which is plainly mathematically not accurate. The second communication actually paraphrases, I think fairly accurately, what the statute is, and it says the rate is currently 2.5%. So I don't actually agree with the plaintiff that there are two misstatements at issue. And then the amount of money received is, you know, mathematically over 5% compounded annually. It's plainly not correct. So plaintiff's only fact that has been alleged in support of the notion that she didn't get the correct amount of money is prudential paid 2.5%. That is not a well-pleaded factual allegation. Plaintiff had a chance to amend to do that and simply put in a sentence, prudential failed to abide by the interpretation adopted by the district court. That doesn't get the plaintiff to plausibility, and that's the plaintiff's obligation under Iqbal. Plaintiff doesn't get a thumb on the scale, you know. But in your brief here, I think your brief said the rate that was paid was roughly 5.18%. Is that right? Yeah. Is that, if we took a fluctuating rate, a blended rate from 1981 to 2013, is it only 5% or is it actually much higher? I'm familiar with interest rates, Judge Weiner, when I was a child, and they were about 19, 20, 21%. And so I can't imagine the blended rate would only be 5%. Well, this is the rate that the insurance company pays on funds held internally on deposit. This is not necessarily the highest rate one could get in the market. I think it's probably a fairly competitive rate over time. I think there were years where the rate would have been higher and years where the rate would have been lower. But, you know, again, I think it's the plaintiff's burden here to allege facts that support the notion that the correct rate wasn't paid. And I don't think the plaintiff has done that at all. You know, the plaintiff has sort of pointed to, oh, it was 2.5%. That's the only fact, you know, fact pleaded. It's not a well-pleaded fact. I mean, this is what, you know, 12 and B and Iqbal require. They have to have plausibility. I don't think they get to plausibility by not pleading facts at all that support it. I don't think they get to plausibility by a sense that, gee, maybe market rates could have been higher. This is an internal rate set by the company. But so how could they possibly plead it without more discovery? If it's an internal rate that's not published, how do they, how could they plead it more specifically? Well, frankly, in this case, I don't know that the plaintiff can plead it more specifically. I think the case ought to be dismissed. I think the company paid the correct rate and plaintiff hasn't been able to plead otherwise. But how does plaintiff have any way to know that? She asked what rate. She was told a rate, plainly false. And now she says, they told me a rate. It's not true or it would be too low. What else is she supposed to do other than try to get discovery on this? I don't understand how she could do better. Well, I guess I would come back to the pleading standards. It's the plaintiff's burden to plead her claim and to plead a plausible claim in which she alleges facts that support it. The plaintiff does not get discovery on the off chance that there could be a claim here. That's just not the way it works, Your Honor. And so that's certainly our position. If it's not the way it works, it ought to be the way it works. I'm sorry. If it's not the way it works, it ought to be the way it works. And therefore, maybe it will be the way it works. Okay. If I have another couple of minutes, I just wanted to turn. You're in the red, literally. Oh, I'm negative? Yes. Oh, I'm sorry. I apologize. Thank you, Your Honor. Let me talk to you, Judge Meijer. We'll give you one minute to finish if you'd like. Oh, you know, all I wanted to add was that I think that if you look at the way the statute was developed, it's very clear that the legislature was not envisioning a situation of inequity in which different people whose funds were held at the same time were getting different amounts of money. The original number considered was 7%. 7% would have applied equally across the board to everyone. Whose money was held at a certain time. They backed away from that. They went to this deposit rate, which is also a rate, a reference rate that applies equally to everyone whose funds are held at a certain point in time. There's just no basis in anything to do with the statute to get from there to this inequitable situation where people whose money is being held at the same time by the company may be receiving completely different rates of interest depending on where their loved one died. Thank you very much. Thank you, counsel. And counsel, as you're approaching, I believe the answer to the jurisdiction question was that you asked for judgment to be entered. Isn't that correct? That is correct, your honor. We cited Ninth Circuit authority permitting this court to review dismissals without prejudice. And that'll be at ER 1 through 3, where Judge O'Connell entered judgment at your request. The, it's ER 1 actually, I believe. At ER 3, you said, I'm sorry, I didn't hear you. Okay. Let me start by saying that the questions you asked of Prudential illustrate why the statute can't be interpreted as this free-form floating rate. There's no formula, there's no discussion in the legislative history of a variable rate, and you have Prudential saying, well, it's discretionary, we don't publish it, we change it. When legislatures allow variable rates, they establish formulas. There's none of that here. There's no inequity. These are people who had their loved ones perish, who for one reason or another did not know there was a policy. Had they wanted their money, had they made a claim, they would have received payment at the then-prevailing interest rate at the time of death. There's no inequity in saying that people will be paid proceeds bearing interest at the rate that they would have received in that rate, had they received the proceeds as envisioned by the legislature. The subsection C of the statute specifically requires that notice be given of the specified rate when the insurance company determines its due. Again, that's totally inconsistent with some fluctuating rate. In the legislative history cited, the rate is, in that notice, to be the particular specified rate. It would be impossible for an insurance company to provide that notice with a particularized, specified interest rate that you will receive if the statute is to be interpreted to say that the insurance company gets to apply a fluctuating rate over time that is unfathomable, unknowable at the time that that notice is provided. You come back to the then-current rate, and the only way to square all of that language is that it's the rate in effect. Initially, the statute provided for a 7% rate. The legislative history at that time said that it would be, that was the quote specified rate. I'm sorry, I want to go back to this jurisdictional issue. Why did you, once interlocutory appeal was denied, why did you want dismissal to be without prejudice? We wanted to make sure that there was no argument that we could not raise issues on appeal, and we looked to Ninth Circuit precedent. As the Court noted, I think, below, it could be with or without prejudice. It's at the discretion of the Court, and she elected to do it without prejudice. The standard that she was, that the judge below was imposing on us was to basically say, you have to come forward with facts showing, with particularity, how Prudential actually calculated the rate, which are facts that are unknown and unknowable to us without the benefit of discovery. Twombly does not require that you divine facts that you couldn't possibly know without discovery. You could have gotten a final judgment and argued that to us anyway, and we could have remanded and said, you have a chance, dismissal should not have been with prejudice, and you could have a chance for discovery. But usually, we don't have appeals when it's dismissal without prejudice. So this is a little unusual, what you asked for. I mean, were you trying to amend again at that point in the district court? No, we were not. We wanted review by the Ninth Circuit of the decision below, because we are convinced that the statutory interpretation was incorrect, and we remain convinced that, in any event, we should have been allowed to move forward and obtain some discovery, given the fact that the complaint not only plausibly but definitively alleges that Prudential misrepresented on at least two occasions how much the interest was being paid, what the basis for it was. And so that was the reason, Your Honor, we are seeking and still are seeking Ninth Circuit review. Unless there are any further questions, I am now in the red. Thank you very much. Case to disargue will be submitted.
judges: Reinhardt, Owens, Friedland